PELHAM HALL CO. v. CARNEY, Former Collector of Internal Revenue.

No. 3517.

Circuit Court of Appeals, First Circuit.

May 14, 1940.

---

Robert H. Davison, of Boston, Mass. (Philip J. Woodward and Haussermann, Davison & Shattuck, all of Boston, Mass., on the brief), for appellant.

James P. Garland, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., and Edmund J. Brandon and C. Keefe Hurley, both of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAGRUDER, Circuit Judge.

Pelham Hall Company, the plaintiff below, appeals from a judgment for the Collector in an action for the recovery of an alleged overpayment of income taxes for the fiscal year ending August 31, 1932. The item in dispute has to do with the base upon which depreciation on a certain building owned by the plaintiff is to be calculated.

The plaintiff was incorporated May 6, 1931, as a means of refinancing the Pelham Hall Building in Brookline, Massachusetts. There were outstanding and in default $1,172,000 of bonds of the predecessor corporation, called Pelham Hall, Inc., which had constructed the building. The bondholders turned in their bonds to the plaintiff, in exchange for stock of the plaintiff at an agreed ratio. At the foreclosure sale the only bid on the building was one of $450,000 made on behalf of the plaintiff. The old bonds were surrendered in payment of the bid price.

In its income tax return for the fiscal year ending August 31, 1931, the plaintiff claimed the cost of the building to it to be $806,000 (which was its assessed value) and used this figure as the basis for calculating a deduction on account of depreciation. The Commissioner disallowed in part the claimed deduction for depreciation, insisting that the base must be reduced to $450,000, the bid price. Thereafter the plaintiff petitioned the Board of Tax Appeals for a redetermination of the deficiency, advancing in its petition the following proposition: "The price bid at the foreclosure sale of $450,000.00 is not conclusive as to the measure of cost of the property to the petitioner but that what occurred was an exchange of property (bonds of the old corporation) for property (assets of the old corporation) so that the basis for depreciation of the assets so received should be the fair market value of the assets at the time of their receipt by the petitioner."

After taking evidence as to the fair market value of the building when acquired by the plaintiff, the Board affirmed the Commissioner's determination. Recognizing that the cost of the building to the plaintiff was the value of the bonds given up in exchange for it, and that the bonds were worth the fair market value of the building mortgaged to secure them, the Board concluded that "although the bid itself does not conclusively establish the amount of the price actually paid, the evidence does not establish that the price was in fact more than the bid." Pelham Hall Co. v. Commissioner, 33 B.T.A. 329, decided October 30, 1935.

In its income tax return for the following fiscal year, ending August 31, 1932, the plaintiff again put down $806,000 as the cost of the building to it, and figured its deduction for depreciation on this basis. Again, the Commissioner reduced the cost basis to $450,000 and determined

a deficiency accordingly. On January 20, 1934, the plaintiff paid this deficiency assessment.

A claim for refund was filed with the Commissioner on January 15, 1936, in which the plaintiff stated:

"The principal reason for the additional assessment was the disallowance of depreciation as claimed on the return, the Bureau of Internal Revenue claiming that the basis for depreciation of the building should be the bid-in price at the foreclosure sale.

"The taxpayer contends that such bid-in price did not represent the fair value of the building when acquired and respectfully requests that the value as shown on the return be allowed and refund of the additional assessment be ordered accordingly."

This refund claim was disallowed by the Commissioner on July 21, 1936, on the strength of the above-cited decision of the Board of Tax Appeals, dealing with the same issue which had arisen in the previous tax year.

On September 8, 1936, the present action was begun. The plaintiff's declaration set forth that the deficiency assessment was erroneous, in that the Commissioner should have allowed the plaintiff "to compute its depreciation as 2 percent of $806,000, the true capital base of the building known as Pelham Hall at the time it was acquired by the plaintiff".

Defendant's amended answer, which the District Court allowed to be filed on July 13, 1937, consisted of a general denial and an affirmative defense that the decision of the Board of Tax Appeals in Pelham Hall Co. v. Commissioner, 33 B. T.A. 329, previously cited, rendered the issue presented in the plaintiff's declaration res judicata.

Up to this point, the only dispute had been as to the "cost" of the building to the plaintiff under Section 113(a) of the Revenue Act of 1928.[1]

Then came the decision of the Circuit Court of Appeals for the Sixth Circuit in Commissioner v. Newberry Lumber & Chemical Co., 94 F.2d 447, announced February 11, 1938, where the court held, in a transaction similar to that of the case at bar, that the refinancing operation was a tax-free reorganization and that under Section 114(a) in conjunction with

[1] Revenue Act of 1928, c. 852, 45 Stat. 791:

"Sec. [§] 23. Deductions from Gross Income

"In computing net income there shall be allowed as deductions:

" * * *

"(k) *Depreciation.* A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

" * * *

"(m) *Basis for Depreciation and Depletion.* The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be as provided in section 114. * * *"

"Sec. [§] 113. Basis for Determining Gain or Loss

"(a) *Property acquired after February 28, 1913.* The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

" * * *

"(7) Transfers to corporation where control of property remains in same persons. If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer; * * *"

"Sec. [§] 114. Basis for Depreciation and Depletion

"(a) *Basis for depreciation.* The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in section 113 for the purpose of determining the gain or loss upon the sale or other disposition of such property." 26 U.S.C.A.Int.Rev.Acts, pp. 358, 380, 383.

Section 113(a) (7) of the Revenue Act the capital base for the reorganized corporation was the cost of the assets to the old corporation.

Thereafter, on November 29, 1938, the case came to trial. Taking its cue from the recent decision in the Newberry case, the plaintiff shifted from its ground for recovery set forth in the claim for refund, and sought to establish its right to take over the depreciation base of the predecessor corporation. The defendant adhered to the affirmative defense of res judicata, which the court below held was well taken. Judgment was given for the defendant.

Without examining the res judicata point, we think there is a fatal defect in the plaintiff's case which we are bound to notice on the present record. The claim for refund filed by the plaintiff will not support a recovery of the alleged overpayment upon the new ground advanced for the first time at the trial in the District Court.

Congress has made the filing of a timely claim for a refund a statutory prerequisite to the recovery back of taxes alleged to have been illegally collected.[2] The claim for refund filed by the plaintiff assumed the applicability of the general rule in Section 113(a) of the Revenue Act making the "cost" of the property to the taxpayer the basis for computing depreciation, and directed the Commissioner's attention to an alleged error in this cost figure as allowed by him. No facts were set forth in the claim which would suggest to the Commissioner that another subsection of the Revenue Act was applicable, that is, the exceptional provision in Section 113(a) (7) which would entitle the taxpayer to take over the cost base of the predecessor corporation. It may be that the facts as to the reorganization appeared in the Commissioner's files. This is immaterial. Dascomb v. McCuen, 2 Cir., 73 F.2d 417, 418. The Commissioner's attention was not directed to them as having a bearing on Section 113(a) (7); and it does not appear that the Commissioner was ever called upon to consider or ever did consider the reorganization provisions of the Revenue Act in passing on the claim for refund. Naturally enough, he did not, for the claim for refund set forth no

---

[2] Section 322 of the Revenue Act of 1932, 47 Stat. 169, 242, 26 U.S.C.A.Int. Rev.Acts, p. 571, provides:

"(a) Authorization. Where there has been an overpayment of any tax imposed by this title, the amount of such overpayment shall be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance shall be refunded immediately to the taxpayer.

"(b) Limitation on Allowance—

"(1) Period of Limitation. No such credit or refund shall be allowed or made after two years from the time the tax was paid, unless before the expiration of such period a claim therefor is filed by the taxpayer."

Section 3226 of the Revised Statutes, as amended by Section 1103(a) of the Revenue Act of 1932, 47 Stat. 169, 286, 26 U.S.C.A.Int.Rev.Acts, p. 652, reads:

"No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. * * *"

Article 1254, Regulations 77 (1932 Act), provides:

"Claims for refund by taxpayers.— Claims by the taxpayer for the refunding of taxes, interest, penalties, and additions to tax erroneously or illegally collected shall be made on Form 843, and should be filed with the collector of internal revenue. A separate claim on such form shall be made for each taxable year or period.

"The claim must set forth in detail and under oath each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof. No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed prior to the expiration of such period. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund."

facts indicating the cost of the building to the predecessor corporation, as would have been done, had the contention been advanced that Section 113(a) (7) was applicable. The claim for refund provoked quite a different line of investigation, involving a consideration of different questions, both of fact and law. Plainly, the claim for refund was not in compliance with the Commissioner's regulations,[3] so far as the taxpayer seeks to interpret that claim as embracing the ground for recovery now insisted upon.

The exigencies of the case now put the plaintiff in somewhat of a dilemma. To combat the defense of res judicata it contends narrowly that the issues presently in question were never raised or litigated in the earlier proceedings, that: "The only question presented to the Board was the fair value of the building at the date of foreclosure. No evidence was ever presented to establish that there had been a tax-free reorganization or to establish the cost of the building to the predecessor company. These questions have never been adjudicated." But to sustain the adequacy of the claim for refund the plaintiff seeks to give the broadest possible interpretation of the issue there presented. In this connection it says: "The claim of refund clearly states that the plaintiff objects to the partial disallowance by the Commissioner of the plaintiff's deduction for depreciation on the Pelham Hall building. This was and continues to be the dispute in regard to the tax in question. The Commissioner has insisted upon allowing depreciation on a base of only a rateable part of $450,000, while the plaintiff has contended that it is entitled to use a base at least as great as $806,000. Nothing can be clearer than that the claim of refund places this matter squarely in issue."

■ In the absence of a proper amendment or of an operative waiver by the Government,' the taxpayer in suing for recovery back of taxes paid is confined to the scope of the grounds for refund asserted in the claim filed with the Commissioner. United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 272, 51 S.Ct. 376, 75 L.Ed. 1025; Real Estate-Land Title & Trust Co. v. United States,

309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. ——; Snead v. Elmore, 5 Cir., 59 F.2d 312; Edwards v. Malley, 1 Cir., 109 F.2d 640, 645; Dascomb v. McCuen, 2 Cir., 73 F.2d 417, 418, 419; Taber v. United States, 8 Cir., 59 F.2d 568; H. Lissner Co. v. United States, Ct.Cl., 52 F.2d 1058. Looking at the claim for refund filed in this case we see that the "ground" stated therein is not an unsupported assertion that the deduction for depreciation should have been larger; rather, the "ground" is the specific reason assigned for a revision of this figure, namely, that the fair value of the building, rather than the bid price, should have been taken as the cost to the taxpayer.

It may be doubted whether after the lapse of the two years' statutory period for filing claims for refund the plaintiff could have amended the specific original claim, based upon an alleged erroneous determination of the cost of the building to the taxpayer, by shifting to the contention that the proper base was not the cost to the taxpayer but the cost to the predecessor corporation. See United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405; United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398. No decision on this point is called for, however, because the taxpayer made no effort to amend the original claim and indeed in any event could not have made an effective amendment after the original claim had been disallowed by the Commissioner on July 21, 1936. See Edwards v. Malley, 1 Cir., 109 F.2d 640, 645.

■ It is urged, however, that the conduct of the defendant at the trial constituted a waiver of any objection which the Government might have taken to the sufficiency of the claim for refund. Much reliance is placed upon Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253. There the Commissioner had disallowed a refund claim based upon two specific grounds and the taxpayer in his suit abandoned the original grounds for refund and advanced a third ground which, by stipulation of the parties, was the sole issue litigated and decided. The case rests upon the fact that at the time the stipulation was given, the taxpayer still could have filed a new claim for refund, the statutory period not yet hav-

---

[3] See footnote 2, supra.

ing run. The Government could have insisted at the trial that the claim for refund was insufficient to support a recovery on the new ground advanced; but not having done so, and having elected to litigate the new claim on its merits, it was obviously inequitable for the Government, after having caused the taxpayer to refrain from starting afresh by the filing of a new claim for refund, to raise this objection at a later stage. That this was a basis of the so-called "waiver" was made clear in the later case of United States v. Garbutt Oil Co., 302 U.S. 528, 533–535, 58 S.Ct. 320, 82 L.Ed. 405, in which the court stated that the Commissioner had power, prior to the expiration of the period of limitation for the filing of·claims for refund, to waive provisions of the Treasury Regulations as to the form of claims for refund; but held that no conduct by the Commissioner after the period for filing claims for refund had expired could amount ·to an effective waiver. See also Mohawk Mining Co. v. United States, Ct.Cl., 1939, 26 F.Supp. 1017.

In the present case it is doubtful whether there was any conduct by the Government which could be even the starting point of a waiver. No stipulation was filed as in Tucker v. Alexander, supra. It is true that the insufficiency of the claim for refund was not pleaded as a defense; but this was because the taxpayer's declaration in the court below was not a departure from the refund claim, and it was not until the trial that the taxpayer advanced the new ground based upon the alleged tax-free reorganization. All that the defendant did was to adhere to the pleaded defense of res judicata. The defendant's failure at the trial to raise the additional point as to the insufficiency of the claim for refund did not prejudice the plaintiff in view of the fact that the statutory time for the filing of a claim for refund on the new ground advanced had long since elapsed.

So far as the record shows, the plaintiff made no effort in the court below to prove its case on the ground asserted in the refund claim. Since no other ground was open to the plaintiff, it follows that the defendant was entitled to judgment.

The judgment of the District Court is affirmed.